UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 21-cr-62-JJM-PAS |
| EDGAR MEDINA; and ALIJAH PARSONS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER

There are three written posttrial motions pending before the Court – Defendant Alijah Parsons' "Renewed Motion for Judgment of Acquittal" (ECF No. 401) and "Motion for a New Trial" (ECF No. 402); and Defendant Edgar Medina's "Motion for a New Trial" (ECF No. 403). The Government has filed a collective objection. ECF No. 406.

Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Rule 33 permits a district court to grant a defendant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The remedy of a new trial is used sparingly and only where there would be a "miscarriage of justice" and the "evidence preponderates heavily against the verdict." *United States v. Merlino*, 592 F.3d 22,

32 (1st Cir. 2010).  When considering a motion for a new trial, a district court may "weigh the evidence and evaluate the credibility of witnesses," but should defer to a jury's credibility assessment absent "exceptional circumstances."  *Id.* at 32-33.

1. *Alijah Parsons' Motions for Judgment of Acquittal – Fed. R. Crim. P. 29[1] and New Trial – Fed. R. Crim. P. 33.*

Under either of these rules and standards, Ms. Parsons' motions fail because the evidence presented at trial supports the convictions determined by the jury.

Ms. Parsons claims that the Government did not produce sufficient evidence concerning her knowledge of the presence of cocaine in the mailed packages.  She asserts in part:

> The Government's proof of knowledge was entirely circumstantial.  It relied upon mailing activity, transmission of USPS receipts, fingerprint evidence on exterior and limited interior packaging and games material, limited call data reflecting brief contact with a Puerto Rico number characterized by the Government as associated with a supplier, and her relationship with Edgar Medina the father of two of her children.  There was no direct evidence that Ms. Parsons handled cocaine, opened brick wrappings, observed narcotics, discussed drugs, or received narcotics proceeds.

ECF No. 402 at 2.

The Government responds by first asserting that circumstantial evidence is appropriate for a jury to consider, and that the evidence taken as a whole, including reasonable inferences, can suffice to find guilt.

> [T]he government offered evidence of her association with various phases of the drug distribution: "packaging evidence," "mailing activity," and "telephone evidence."   ***  Taking the evidence in the light most

---

[1] All Defendants also made Rule 29 motions after the prosecution rested and at the close of all the evidence.  The Court took those motions under advisement.  The Court now rules on those motions as well as the written motions for acquittal.

favorable to the government, a rational jury could easily have found Parsons' and Medina's implicit agreement in the conspiracy.

The jury was entitled to infer Parsons' implicit agreement from various facts, including that Parsons flew down to Puerto Rico, the drug source of supply location, twice in a two-month period during the conspiracy timeframe (April – June 2021), one of those times together with Medina. Leading up to the first trip in May 2021, a co-conspirator told her to call the Puerto Rican supplier (the same supplier that Medina texted when the missing cocaine was delivered), and while she was down in Puerto Rico, she did in fact contact the supplier more than 20 times within a 24-hour period. Just 3 days after she left Puerto Rico in May 2021, two drug packages were mailed from two separate Puerto Rican post offices to two different addresses in Rhode Island and were retrieved by co-conspirator Garay.

On the second trip in June 2021, Parsons flew down to Puerto Rico with Medina, and personally mailed three kilograms of cocaine concealed within Dominoes game boxes. Multiple of Parsons' fingerprints were located on the adhesive side of the packaging tape that sealed shut the Dominoes game boxes containing the three kilograms of cocaine, indicating she had knowledge of the package's contents. Parsons and Medina shipped those three parcels from three different USPS post office locations within a two-hour timeframe, a tactic USPIS Inspectors testified is used by drug traffickers to evade law enforcement detection. Various versions of the name "Parsons" were listed as purported senders of the parcels, another tactic designed to thwart law enforcement detection. Parsons then texted the USPS receipt for all three drug packages to Medina after mailing them. She also followed up with Medina about the packages on the morning all three parcels were to be delivered, inquiring whether "[e]verything is looking good for today?" After Medina responded, "Yea," Parsons replied, "That's good to hear."

All in all, a rational jury could easily find that Parsons knew that the boxes she packaged and sent from Puerto Rico contained drugs, and that she had a stake in the conspiracy based on her relationship with Edgar Medina. Viewed in the light most favorable to the government, her text messages demonstrate her knowledge and comprehension of the "risks" associated with drug trafficking, and her willingness to participate in the conspiracy are reflected in her actions, like consoling Medina after tens of thousands of dollars' worth of cocaine went missing, and her traveling with him to Puerto Rico to personally ensure three kilograms of cocaine would be mailed to Rhode Island. A rational jury could reasonably have concluded that Medina and Parsons knew the contents

of the packages, especially given that their fingerprints were located on items within the parcels that they shipped – not merely on the outside of the boxes.

The government offered evidence of Parsons' role as the trusted confidant of Edgar Medina who physically joined co-conspirators during key dates in the conspiracy beyond just the June 2021 trip to Puerto Rico. Not only did she join Edgar Medina and Andres Garay on May 24, 2021, when the missing cocaine package arrived, but she was also with co-conspirators on May 26-28, 2021, when Edgar Medina, Andres Garay, and Irving Medina conducted surveillance around post offices and the mailman's home in Pawtucket, RI, and on June 1, 2021, when Edgar Medina and Ronald Hall kidnapped a mailman. That she had photographs of mail trucks and mailmen on her phone that she deleted those very photographs on the date of the kidnapping, and that her fingerprints were on the back of the rear license plate of the kidnapping vehicle, all support the jury's conclusion that she was a knowing, willful participant to the drug trafficking conspiracy.

Considering all of the evidence introduced at trial, both direct and circumstantial, that established the nature of the conspiracy, the defendants' prolonged involvement in it, their close association with one another, and their conversations and actions, a reasonable jury could conclude that the defendants knowingly joined a conspiracy to possess with intent to distribute cocaine.

ECF No. 406 at 9-12 (citations omitted).

Considering all the evidence, a jury could reasonably have concluded that Ms. Parsons knowingly joined a drug conspiracy and had sufficient actual and inferred knowledge of the drugs involved. Thus, the Court DENIES her requests for a judgment of acquittal and/or a new trial. ECF Nos. 401, 402.

## 2. *Edgar Medina's Motion for a New Trial – Fed. R. Crim. P. 33*

Mr. Medina bases his new trial request on insufficiency of the evidence to sustain a conviction for conspiracy and kidnapping and errors of law, including jury instructions on both possession and attempted possession, severance, illegal warrants, and inadmissible text messages.

4

As to the legal challenges, the Court reaffirms its pretrial and trial rulings on each of these matters and therefore denies Mr. Medina's motion on those grounds (i.e., severance, illegal warrants, and admission of text messages).  As to the sufficiency of the evidence for the drug conspiracy charge, the Court incorporates the discussion on that topic from above.[2]

As to the sufficiency of the kidnapping charge, the governments asserts:

> A reasonable jury could conclude, based on the facts, that Edgar Medina and Ronald Hall's hold of Mr. Darocha, a USPS employee engaged in his official duties on June 1, 2021, was for an appreciable period.  The duration was approximately 14 minutes, which the qualitative aspects establish was an appreciable amount of time.  Edgar Medina and Ronald Hall approached Mr. Darocha dressed in all black, with their faces covered, and guns drawn.  They accosted him—one from the front, one from behind—pointed their guns directly at him, and shoved him into the back of Medina's Chrysler 300.  Mr. Darocha went unwillingly into the backseat of the car, was terrified, and feared for his life.  The purpose of the men's holding Mr. Darocha was for information about their

---

[2] As to the drug conspiracy conviction of Mr. Medina specifically, the Government added:

> [C]ell phone conversations surrounding Garay, Hall, and Medina's trip to Puerto Rico in January 2021 indicate Medina's arrangements of flights for the co-conspirators and cryptic discussions surrounding buying "carry-on" bags and things going "smooth" supported the government's theory about co-conspirators' strengthening the drug connection during that time.  The evidence also established that Medina relied on and communicated with numerous co-conspirators, like Parsons, Garay, Magdalia Valentin, Robert Cruz, and the Puerto Rican source of supply, to arrange for the shipment, tracking, and retrieval of cocaine to various addresses in May and June 2021.  Given the quantity and content of correspondence between, and association among, co-conspirators during key timeframes of the conspiracy when packages were mailed, delivered, and picked up, as well as before, during, and after the kidnapping, the evidence introduced at trial easily supports the finding that Medina willfully joined an agreement to possess with intent to distribute cocaine.

ECF No. 406 at 8-9 (citations omitted).

missing cocaine package, the contents of the package itself, as well as information about other USPS employees who they suspected had taken their missing cocaine.  The danger posed to Mr. Darocha was severe, as Medina pointed his pistol directly at Mr. Darocha for the entire duration of the ride, all the while questioning him.  Medina and Hall held Mr. Darocha captive such that Mr. Darocha was unable to yell out to his neighbor or exit the car, for fear of being shot.  The men isolated Mr. Darocha, driving him at gunpoint down past a construction zone by the bay and utilizing back roads, increasing the likelihood that he would be harmed.  The government's presentation of evidence established that Mr. Darocha was isolated from everyone except Medina and Hall inside that car, was moved from the more populated area of Division Street to the less populated residential area of his home, and interrogated at gunpoint.  From the evidence in this case, a rational jury could find that the 14-minute hold was appreciable.

ECF No. 406 at 16-17 (citations omitted).

To prove the kidnapping charge, the Government had to show beyond a reasonable doubt that: (1) Mr. Medina knowingly and unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away Clint Darocha; (2) at the time Clint Darocha was an employee of the United States Postal Service; (3) Mr. Medina acted while Clint Darocha was engaged in, or on account of, the performance of official duties; (4) Mr. Medina held or detained Clint Darocha against his will; and (5) that the kidnapping occurred for the purpose of ransom, reward, or some other benefit to Mr. Medina.  18 U.S.C. 1201(a)(5); *see also United States v. Coleman*, 149 F.4th 1, 43-52 (1st Cir. 2025).

The evidence presented to the jury showed that Mr. Medina and an associate knowingly kidnapped and held against his will for an appreciable time, Clint Darocha, a United States Postal Service employee engaging in his official duties of

6

delivering mail, to obtain illegal drugs.  Each element of kidnapping was proven beyond a reasonable doubt, supported by sufficient admissible evidence.

### 3. Conclusion

The Court finds that this jury was attentive, engaged, objective, and driven by the evidence and the law.  Their verdict was nuanced, factually supported, and smart. It was consistent with the verdict the Court would have concluded had it been a juror. The Court DENIES the Defendants Motions for New Trial and Judgment of Acquittal (ECF Nos. 401, 402, and 403), as well as those motions made orally during trial.


IT IS SO ORDERED.


*s/John J. McConnell, Jr.*

_____
John J. McConnell, Jr.
Chief Judge
United States District Court


April 6, 2026